UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CHERRY LYNN CLIFFORD,<br><br>    Plaintiff,<br><br> vs.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner, Social Security Administration,<br><br>    Defendant. | CIV. 16-5091-JLV<br><br>ORDER |

  Plaintiff Cherry Clifford filed a complaint appealing the final decision of Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration, finding her not disabled. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 17). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 14). The parties filed their JSMF. (Docket 15). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 16) is denied.

---

  [1]Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Fed. R. Civ. P. 25(d), Ms. Berryhill is automatically substituted for Carolyn W. Colvin as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 15) is incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order.

On August 12, 2013, Ms. Clifford filed an application for disability insurance benefits ("DIB") under Title II. Id. ¶ 1. She subsequently filed for supplemental social security income ("SSI") benefits under Title XVI. Id. In both applications, Ms. Clifford alleges an onset of disability date of January 15, 2013. Id. Her last insured date for DIB purposes was March 31, 2014. Id. On June 23, 2015, the ALJ issued a decision finding Ms. Clifford was not disabled. Id. ¶ 4; see also Administrative Record at pp. 14-25 (hereinafter "AR at p. ___"). The Appeals Council denied Ms. Clifford's request for review and affirmed the ALJ's decision. (Docket 15 ¶ 10). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which Ms. Clifford timely appeals.

The issue before the court is whether the ALJ's decision of June 23, 2015, that Ms. Clifford was not "under a disability, as defined in the Social Security Act, from January 15, 2013, [through June 23, 2015]" is supported by substantial evidence in the record as a whole. (AR at p. 25) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

**STANDARD OF REVIEW**

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed,

399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.  See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to DI benefits under Title II.  20 CFR § 404.1520(a).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  (AR at pp. 18-19).

**STEP ONE**

At step one, the ALJ determined Ms. Clifford had "not [been] engaged in substantial gainful activity since January 15, 2013, the alleged onset date."  Id. at p. 18 (bold omitted).

**STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ALJ identified Ms. Clifford suffered from the following severe impairment: "medial compartment degenerative change of the left knee, neuritis of the left leg, chronic obstructive pulmonary disease (COPD), hypertension, and diverticulosis with acute episodes of diverticulitis . . . ." (Docket 15 ¶ 6). Ms. Clifford does not challenge this finding. (Dockets 16 & 18).

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled. At that point the Commissioner "acknowledges [the impairment or combination of impairments] are so severe as to preclude substantial gainful activity. . . . [and] the claimant is conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141 (1987). A claimant has the burden of proving an impairment or combination of impairments meet or equals a listing within Appendix 1. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). If not covered by these criteria, the analysis is not over, and the ALJ proceeds to the next step.

At this step the ALJ determined plaintiff's severe impairments did not meet or equal a listing under Appendix 1. (Docket 15 ¶ 7). Ms. Clifford does not challenge this finding. (Dockets 16 & 18).

**STEP FOUR**

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC"). 20 CFR § 404.1520(e). RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from her impairments.

6

20 CFR §§ 404.1545(a)(1).  In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.  20 CFR §§ 404.1545(e).  All of the relevant medical and non-medical evidence in the record must be considered.  20 CFR §§ 404.1520(e) and 404.1545.

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations."  Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence.").  The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.' "  Id. (citing Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

"In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments."  Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003)).  As stated earlier in this discussion, a severe impairment is one which

7

significantly limits an individual's physical or mental ability to do basic work activities. 20 CFR § 404.1521(a).

Relevant to this appeal, the ALJ determined Ms. Clifford retained the RFC to perform "light work,"[2] except she is limited to standing or walking for two hours and sitting for six hours in an eight-hour workday. (Docket 15 ¶ 8). Ms. Clifford challenges this finding on two grounds. First, she asserts "[t]he ALJ erred by adopting an RFC which falls between the 'light' and 'sedentary'[3] exertional levels, but then fail[ed] to make a finding as to the extent of the erosion of the occupational base pursuant to SSR 83-12 . . . ." (Docket 16 at p. 5) (bold and underlying omitted). Second, Ms. Clifford argues "[t]he ALJ erred as a matter of law when he found Plaintiff's diverticulitis and spastic colon resulted in no functional limitations." Id. at p. 9 (bold and underlining omitted). The court addresses these challenges in reverse order.

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR § 404.1567(b).

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR § 404.1567(a).

1. **DID THE ALJ ERR BY FINDING PLAINTIFF'S DIVERTICULITIS AND SPASTIC COLON RESULTED IN NO FUNCTIONAL LIMITATIONS**

Ms. Clifford asserts the ALJ's RFC finding was in error because it contained no limitation related to her severe impairment of diverticulitis. (Docket 16 at p. 9). She argues while the ALJ was "technically correct" because "the medical record does not explicitly state" she had "10 bloody stools a day," the record "does suggest treatment consistent with such symptoms." Id. at p. 10. Because of her diagnosis of "diverticulitis of the colon, spastic colon, patchy erythematous mucosa, and chronic gastritis," Ms. Clifford contends her testimony of "having accidents," and needing to go to the bathroom "about ten times a day," is consistent with those conditions. Id. She testified needing to be "in the bathroom 8-10 minutes at a time during these episodes." Id.

Ms. Clifford argues the RFC designated by the ALJ "does not account at all for [her] need to use the restroom; even assuming the ALJ's finding that [her] symptoms are not at the 'severity' she alleged." Id. at p. 11 (emphasis omitted). She contends "the reality is that the RFC accounts for not even one opportunity . . . to use the restroom if it occurred outside of the standard breaks provided by an employer." Id. (emphasis omitted). "Since the RFC does not set forth all of the practical effects of all of [her] impairments," Ms. Clifford contends "this is error that can only be addressed by remanding the case for further proceedings." Id. at p. 12.

The Commissioner opposes plaintiff's motion for remand on this point. (Docket 17 at pp. 6-10). The Commissioner contends "the ALJ considered Plaintiff's spastic colon and diverticulosis . . . but [concluded] the record does not support a finding that these impairments necessitated unscheduled bathroom breaks." Id. at p. 7 (referencing AR at pp. 21-22).

At the administrative hearing Ms. Clifford testified she was having bowel accidents about 10 times a day because of her diverticulitis. (Docket 15 ¶ 12). She claimed each of these episodes required 8-10 minutes in the bathroom. Id. Ms. Clifford contends the medical records support her testimony. (Docket 16 at p. 10) (referencing Docket 15 ¶¶ 24-25, 27, 33, 35 & 52).

Ms. Clifford's testimony is not consistent with her medical records. Ms. Clifford frequently complained of abdominal pain associated with her diverticulitis during the time period of June-July 2013 and November 2013. (Docket 15 ¶¶ 24-28, 33). However, even in three of those clinical visits, Ms. Clifford reported no nausea, vomiting, or diarrhea. Id. ¶¶ 25-28. In July 2013, her treating physician charted Ms. Clifford's "diverticulitis seemed improved." Id. ¶ 28. In October 2013, Ms. Clifford "denied any abdominal pain, nausea, vomiting, diarrhea [or] constipation." Id. ¶ 30. During a November 2013 emergency room visit, Ms. Clifford did not report any diarrhea or other signs of complications from diverticulitis. Id. ¶ 32. Even the next week when she went to Rapid City Regional Hospital because of her diverticulitis, spatic colon and

abdominal pain, she did not complain of diarrhea or having several bowel movements every day.  Id. ¶ 33.

During seven medical visits in 2014, Ms. Clifford never complained of any ill effects from her diverticulitis.  Id. ¶¶ 37-38, 40, 42-44 & 46.  The only specific entries relating to any abdominal issues charted the following:

January 16, 2014:   "Plaintiff reported no abdominal pain, diarrhea, urinary frequency . . . ."  Id. ¶ 37; and

May 21, 2014:   "She denied . . . abdominal pain, nausea, vomiting and diarrhea."  Id. ¶ 42.

Prior to the June 23, 2015, administrative hearing, Ms. Clifford had six medical visits that year.  Id. ¶¶ 47-52.  In none of these examinations did Ms. Clifford complain of any ill effects from her diverticulitis, let alone having multiple bowel movements every day.  Id.  It stands to reason if Ms. Clifford was confronted with daily multiple bouts of diarrhea she would have raised the issue with her medical care providers, even if the purpose of the medical examination was not directly related to her diverticulitis.

The ALJ found "the medical evidence fails to support the alleged severity of the claimant's symptoms and limitations."  (AR at p. 22).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox, 471 F.3d at 906.  The court's role is not to re-weigh the evidence and it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  Guilliams, 393 F.3d at 801.  The ALJ's

11

findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate, 457 F.3d at 869; Howard, 255 F.3d at 580.

The court finds the ALJ's decision on this issue is supported by good reason and is based on substantial evidence. Id. Ms. Clifford's challenge to the ALJ's decision on this basis is denied.

> 2. DID THE ALJ ERR BY ADOPTING A RFC WHICH FELL BETWEEN THE "LIGHT" AND "SEDENTARY" EXERTIONAL LEVELS WITHOUT MAKING A FINDING AS TO THE EXTENT OF THE EROSION OF THE OCCUPATIONAL BASE PURSUANT TO SSR 83-12[4]

"To be considered capable of performing a full or wide range of light work, [Ms. Clifford] must have the ability to do substantially all of these activities." 20 CFR § 404.1567(b). The ALJ found Ms. Clifford's RFC permitted her to perform light work, except she was limited to two hours of standing and walking and six hours of sitting in an 8-hour day. (Docket 15 ¶ 8). The ALJ found Ms. Clifford's "ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations." (AR at p. 24). Those additional limitations are Ms. Clifford cannot stand or walk for a total of approximately 6 hours in an 8-hour day, but rather, she is limited to two hours of standing and walking and six hours of sitting in an 8-hour day. (Docket 15 ¶ 8). The ALJ sought the testimony of a vocational expert to "[t]o determine the extent to which these limitations erode the unskilled light occupational base [of

---

[4]SSR 83-12, 1983 WL 31253 (1983).

jobs in the national economy]" for a worker of Ms. Clifford's "age, education, work experience, residual functional capacity." (AR at p. 24). According to the ALJ:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled, light occupations such as small product assembler . . . of which there are 60,000 positions . . . after a 25-percent erosion due to the limitations on standing and walking; electronics worker . . . of which there are 22,400 positions . . . after a 10-percent erosion due to the limitations on standing and walking; and machine operator . . . of which there are 63,000 positions . . . after a 25-percent erosion due to the limitations on standing and walking and a five-percent erosion due to the limitation on exposure to vibration.

Id. The ALJ accepted this testimony as "consistent with the information contained in the DOT [Dictionary of Occupational Titles], though [the vocational expert] indicated the . . . eroded numbers of job positions is based on his 30 years of experience . . . ." Id. The ALJ found "the vocational expert's testimony is reliable and [the ALJ] accepts it as substantial evidence of the jobs that exist in the national economy that can [be] performed by an individual with the claimant's age, education, work experience, and residual functional capacity." Id. at p. 25. Based on this finding, the ALJ found Ms. Clifford "not disabled." Id.

Ms. Clifford challenges the ALJ's finding claiming "[t]here was no testimony by the vocational expert, however, as to whether all of these jobs fall into the 'relatively few' light jobs that are performed in the seated position." (Docket 16 at p. 6) (referencing SSR 83-10, 1983 WL 31251, *5 (1983)). She also claims "the ALJ erred when he failed to consider, pursuant to [SSR 83-10],

13

whether the limitation to 2 hours of standing and walking set forth in the RFC 'significantly reduc[ed]' the light job base in general." Id. (emphasis omitted). Ms. Clifford argues that "[w]hile the vocational expert testified that he reduced the numbers of the specific jobs he named due to the RFC limitations . . . the ALJ did not ask and the vocational expert did not testify as to whether these reductions eroded the light occupational base in general such that the sedentary rule would more appropriately apply." Id. (emphasis omitted).

Plaintiff argues this further analysis of the erosion in general of light work is necessary because having a limitation of two hours of standing and walking "necessarily results in corresponding limitations in the amount of time [she] can perform lifting/carrying activities." Id. at p. 7 (emphasis omitted). She submits "the reality is that carrying indisputably requires the claimant to walk and lifting requires the need to stand, unless there are jobs in the economy where the worker is 'lifting' while remaining in a seated position."[5] Id. (emphasis omitted).

The Commissioner argues the ALJ properly concluded Ms. Clifford "could perform a reduced range of light work involving standing and walking for a total of 2 hours in an 8-hour workday." (Docket 17 at p. 4) (referencing SSR 83-10). The Commissioner asserts "numerous courts have found that a two hour standing or walking limitation is consistent with the definition of a reduced range

---

[5] Ms. Clifford "agrees that if the 'light' occupational base is not significantly eroded by the other limitations in the RFC finding, the ALJ applied the appropriate Grid Rule in this case." (Docket 16 at p. 8).

14

of light work." Id. (citing Torres v. Berryhill, No. CV 15-4416, 2017 WL 1194198, at *3 (D. Minn. Mar. 30, 2017) (unpublished) (internal quotation marks omitted).

Because Ms. Clifford's standing and walking limitation does not fit neatly into the light work category, the Commissioner argues the ALJ properly consulted a vocational expert. Id. (referencing SSR 83-12). As a result of the vocational expert's testimony, the Commissioner submits Ms. Clifford's argument the ALJ and the vocational expert's testimony failed to address the erosion of the light work category is without merit. Id. at p. 5.

The Social Security Administration determined that to perform "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour day. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, *6. "[M]ost light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday." SSR 83-14, 1983 WL 31254, *4 (1983). "Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." Id.

The ultimate question is where Ms. Clifford should be evaluated—in the light work classification or in the sedentary work category—under the

Medical-Vocational Guidelines.[6]  The Medical-Vocational Guidelines are being considered because Ms. Clifford is "an individual closely approaching advanced age [50-54] . . . . has at least a high school education and is able to communicate in English . . . . and does not have past relevant work [to make transferability of job skills an issue]."  (AR at p. 23) (bold omitted).  The ALJ looked to Rule 202.13 and observed if Ms. Clifford "had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed . . . ."  Id. at p. 24.  Ms. Clifford argues if Rule 201.09 applies, which looks at sedentary work capabilities, she must be found disabled.  (Docket 18 at p. 2).

The Social Security regulations require that "[w]here an individual's exertional RFC does not coincide with the definition of any one of the ranges of work . . . the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability.  The adjudicator will consider the extent of any erosion of the occupational base and [assess] its significance."  SSR 83-12, 1983 WL 31253, *2.  "Where the extent of erosion of the occupational base is not clear, the

---

[6]Appendix 2 to Subpart P of Part 404-Medical-Vocational Guidelines, 20 CFR Pt. 404, Subpt. P, App.2 (the "Medical-Vocational Guidelines").  "The Medical-Vocational Guidelines . . . contain numbered table rules which direct conclusions of '[d]isabled' or '[n]ot disabled' where all of the individual findings coincide with those of a numbered rule."  (SSR 83-12, 1983 WL 31253 (1983)).  "The table rules [do] not direct such conclusions when an individual's exertional RFC does not coincide with the exertional criteria of any one of the external ranges, i.e. sedentary [or] light . . . ."  Id.

16

adjudicator will need to consult a vocational resource. . . . Vocational experts may testify for this purpose at the hearing . . . level[]." Id.

The "burden of production shifts to the Commissioner at step five." Stormo, 377 F.3d at 806. Relevant to the present issue, the ALJ asked the vocational expert the following hypothetical question:

> I'd like you to assume there's an individual of the same age and education as the claimant with no past relevant work experience . . . I'd like you to assume that the person . . . could perform work at the light exertion level; however, the person can stand and walk no more than two hours during an eight-hour workday, could sit about six hours during an eight-hour workday . . . .

(AR at pp. 47-48). In addition to relying on the DOT, the vocational expert testified he relied on his 30 years of experience as a vocational rehabilitation counselor during which he worked with "thousands of adult disabled workers . . . performed thousands of labor market contacts, and hundreds of actual onsite job analyses . . . ."[7] (AR at p. 50). The vocational expert's testimony is correctly summarized in the ALJ's decision. (AR at p. 24).

The hypothetical question posed by the ALJ properly contained the limitations established in Ms. Clifford's RFC. Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("The hypothetical question posed to the vocational expert must capture the concrete consequences of [the] claimant's deficiencies.") (internal quotation marks and citation omitted). The vocational expert found

---

[7]A different attorney represented Ms. Clifford at the administrative hearing. (AR at p. 31). During the hearing, Ms. Clifford did not state a specific objection to the vocational expert's qualifications. Id. at p. 47. A generalized objection that "a citizen has submitted a written objection" was overruled. Id.

17

that a significant percentage of jobs in the light work category would be eliminated because of Ms. Clifford's restrictions on standing, walking and sitting during an 8-hour work day. It was within the realm of the expertise of the vocational expert to assign a percentage of erosion in those job classifications.

Contrary to Ms. Clifford's arguments, there is nothing in SSR 83-10, SSR 83-12, 83-14 or the DOT which mandates a minimum walking or standing requirement to qualify for light work. See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998); Torres, 2017 WL 1194198, *3. Rather, the DOT classifications and SSRs "discuss[] the maximum standing and walking requirement per each exertional level of work." Torres, 2017 WL 1194198, *3; see also Fenton, 149 F.3d at 911; Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995) (The DOT "gives the approximate maximum requirements for each position, rather than their range."); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996) (same). The court finds the ALJ's conclusion that Ms. Clifford's limitation of standing or walking "for two hours is consistent with the definition of light work" and the vocational expert's testimony identifying a significant number of "occupations within the reduced range of light work is consistent with the definition of light work." Torres, 2017 WL 1194198, *4.

Ms. Clifford's argument the vocational expert did not consider an erosion of light work in general is without merit. There is a statement in SSR 83-10 that "[r]elatively few unskilled light jobs are performed in a seated position." SSR 83-10, 1983 WL 31251, *5. That generalized statement does not trump the

vocational expert's testimony.  The vocational expert properly considered the scope of Ms. Clifford's limitations, as described in the ALJ's hypothetical question, and identified a reduced number of light occupations for which she qualified.  "There is adequate evidentiary support in the record to support the [ALJ's] judgment that [Ms. Clifford] could perform light work and was not disabled."  Fenton, 149 F.3d at 911.  The hypothetical question and the vocational expert's answer to the hypothetical question constitute substantial evidence supporting the ALJ's determination Ms. Clifford was not disabled. 42 U.S.C. § 405(g); Lacroix, 465 F.3d at 889.  Ms. Clifford's challenge to the ALJ's decision on this basis is denied.

The ALJ's decision is free of reversible error.  Smith, 982 F.2d at 311.

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 16) is denied.

Dated March 6, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE